UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2007 JUN 25  P 4: 00

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | | |
|---|---|---|
| STEPHEN DUNNE, | ) | CIVIL ACTION |
| | ) | NO. _____ |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE MASSACHUSETTS BOARD OF | ) | |
| BAR EXAMINERS, an administrative | ) | |
| agency of the State of Massachusetts, | ) | |
| WILLIAM F. KENNEDY, JR., | ) | |
| Chairman of the Massachusetts Board | ) | |
| of Bar Examiners, | ) | |
| ANTHONY G. MASSIMIANO, | ) | |
| Chairman of the | ) | |
| Massachusetts Board of Bar Examiners, | ) | |
| ALICE E. RICHMOND, | ) | |
| Chairman of the | ) | |
| Massachusetts Board of Bar Examiners, | ) | |
| GEOFFREY R. BOK, | ) | |
| Chairman of the | ) | |
| Massachusetts Board of Bar Examiners, | ) | |
| MICHAEL K. CALLAHAN, | ) | |
| Chairman of the | ) | |
| Massachusetts Board of Bar Examiners; and | ) | |
| THE MASSACHUSETTS | ) | |
| SUPREME JUDICIAL COURT, | ) | |
| MARGARET H. MARSHALL, Chief Justice, | ) | |
| Massachusetts Supreme Judicial Court, | ) | |
| RODERICK L. IRELAND, Associate Justice, | ) | |
| Massachusetts Supreme Judicial Court, | ) | |
| JUDITH A. COWIN, Associate Justice, | ) | |
| Massachusetts Supreme Judicial Court, | ) | |
| JOHN M. GREANEY, Associate Justice, | ) | |
| Massachusetts Supreme Judicial Court, and | ) | |
| jointly and severally, each aforementioned | ) | |
| named parties in their individual capacity and | ) | |
| also in their official capacity, | ) | |
| | ) | |
| Defendants. | | |

Dunne v. Massachusetts Board of Bar Examiners et al.                                    Doc. 1

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE
## RELIEF AND DAMAGES – JURY TRIAL DEMANDED

**PLAINTIFF, STEPHEN DUNNE, sues the "Defendants," jointly and severally,**

**in their "individual capacities" and also in their "official capacities" and shows the court:**

## I.  INTRODUCTION

1.      Whether characterized as a "right" or "privilege," a person cannot be prevented from the practice of law for arbitrary reasons or in a manner that offends the Due Process or Equal Protection Clauses' of the Fourteenth Amendment of the United States Constitution." "A State cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment." *Schware v. Board of Bar Examiners*, 353 U.S. 232 (1957). "The practice of law is not a matter of the State's grace." *Id*. at 232, n.5. Arbitrary, subjective and politically motivated bar application decisions are unlawful.  A claim of a present right to admission to the bar of a State and a denial of that right is a controversy." *In re Summers*, 325 U.S. 561 (1945).  Moreover, the requirements of procedural due process must be met before a State can exclude a person from the practice of law.

2.      Plaintiff has brought this action alleging that the Massachusetts Board of Bar Examiners and the Massachusetts Supreme Judicial Court, referred to collectively throughout as "Defendants" have engaged in constitutionally invidious discrimination by including an inappropriate question on the Massachusetts Bar Examination compelling Plaintiff to write an affirmative response explicitly and implicitly accepting, supporting and promoting homosexual marriage & homosexual parenting on the Massachusetts Bar Examination as a prerequisite to the practice of law in the State of Massachusetts.

2

3.      Plaintiff's refusal to answer the question at issue in the format proscribed; affirmatively accepting, supporting and promoting homosexual marriage & homosexual parenting resulted in the Plaintiff failing the Massachusetts Bar Examination.

4.      While the ultimate goal of the "Defendants" -- to ensure that persons admitted to the Massachusetts Bar have the requisite moral character, legal knowledge and skill to practice law in Massachusetts is certainly lawful, the means used by the "Defendants" to achieve that goal is not.

5.      The "Defendants" policy, applicable to all applicants, requiring each applicant to affirmatively accept, support and promote homosexual marriage & homosexual parenting on the Massachusetts Bar Examination, as a prerequisite to the practice of law in Massachusetts is certainly unlawful.

6.      Despite Plaintiff's refusal to answer the question at issue in the format proscribed, Plaintiff scored 268.866 points on the Massachusetts Bar Examination, with a passing score equaling 270 points.

7.      Plaintiff's refusal to answer the question at issue in the format proscribed; affirmatively accepting, supporting and promoting homosexual marriage & homosexual parenting resulted in the Plaintiff failing the Massachusetts Bar Examination.

8.      "Defendants" unlawful, arbitrary and capricious targeting of the Plaintiff for punishment based strictly on his refusal to affirmatively accept, support and promote homosexual marriage & homosexual parenting is separate and apart from Plaintiff's good moral character, legal knowledge and skill that would otherwise permit the Plaintiff to competently practice law in the State of Massachusetts.

9.      Plaintiff initiated a Massachusetts Bar application proceeding in November, 2006. In May, 2007, "Defendants" served the Plaintiff with notice of intent to deny his application

3

because the Plaintiff failed to meet the "Defendants" standard's on the Massachusetts Bar Examination.

10.     Plaintiff's refusal to affirmatively accept, support and promote homosexual marriage & homosexual parenting on the Massachusetts Bar Examination resulted in the Plaintiff failing the Massachusetts Bar Examination.

11.     The allegations below leave no doubt that it is the "Defendants" intention to impose a grave constitutional injury upon Plaintiff for Plaintiff's refusal to affirmatively accept, support and promote homosexual marriage & homosexual parenting.

12.     "Defendants" have arbitrarily and capriciously deprived the Plaintiff of his constitutionally protected right to a fundamentally fair licensing procedure.

13.     "Defendants" disguised mechanism to screen applicants according to their political ideology has the discriminatory impact of persecuting and oppressing Plaintiff's sincere religious practices and beliefs, which are protected by the First Amendment of the United States Constitution.

14.     "Defendants" conduct in compelling the Plaintiff to draft an answer that affirmatively accepts, supports and promotes homosexual marriage & homosexual parenting is tantamount to covert suppression of Plaintiff's expressive and associational rights in violation of the Plaintiff's First Amendment rights guaranteed by the United States Constitution.

15.     "Defendants" denial of Plaintiff's legitimate claim of entitlement to a protectable property and liberty interest is in violation of the Fifth Amendment's Due Process Clause of the United States Constitution.

16.     "Defendants" denial of Plaintiff's protectable property and liberty interest is a violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

17. "Defendants" denial of Plaintiff's Equal Protection of the law is a violation of the Fourteenth Amendment of the United States Constitution.

18. "Defendants" undue burden upon interstate commerce, impermissibly prohibiting and preventing Plaintiff from taking advantage of interstate commerce with the State of Massachusetts is a violation of Art. I, § 8, of the United States Constitution.

19. "Defendants" unconstitutional invidious discrimination against Plaintiff is a violation of the Privileges and Immunities Clause of Art. IV, 2, of the United States Constitution.

20. "Defendants" unconstitutional invidious discrimination against Plaintiff is a violation of the Privileges or Immunities Clause of Amendment XIV, Section 1, Clause 2 of the United States Constitution.

21. "Defendants" conduct in compelling the Plaintiff to draft an answer that affirmatively accepts, supports and promotes homosexual marriage & homosexual parenting is tantamount to forcing the Plaintiff to accept "Defendants" irreligion of Secular Humanism in violation of the Establishment Clause of the First Amendment of the United States Constitution.

22. Plaintiff asserts that the "Defendants" unlawful, arbitrary and capricious targeting of Plaintiff resulting in the denial of Plaintiff's application to practice law in the State of Massachusetts clearly violates established constitutional, statutory and decisional law.

23. By these allegations Plaintiff shows that the "Defendants" conduct manifests a callous and mean-spirited disregard for Plaintiff's constitutional rights. For the reasons stated herein, Plaintiff is likely to succeed on the merits of his claim.

24. Plaintiff seeks a preliminary and a permanent injunction having asserted facts sufficient to establish irreparable harm.

25. If no injunction issues, Plaintiff loses important professional employment opportunities as a result of the "Defendants" unlawful, arbitrary and capricious targeting of the Plaintiff.

26.     The injunction Plaintiff seeks will not harm "Defendants" because the conduct on the Bar Examination sought to be enjoined is not necessary to the "Defendants'" important mission of determining whether applicants are fit to practice law in the State of Massachusetts.

27.     Finally, granting the injunction serves the public interest by upholding the important constitutional rights contained within the United States Constitution.

## II. PARTIES

28.     PLAINTIFF, STEPHEN DUNNE, is a citizen of the United States and an applicant for admission to the practice of law in the State of Massachusetts, whose current mailing address is PO Box, Boston, MA 02199.

29.     DEFENDANT, THE MASSACHUSETTS BOARD OF BAR EXAMINERS, (the "Board") is an administrative agency of the State of Massachusetts established to perform bar examination administration and character and fitness qualification investigations in accordance with SJC Rule 3:01. By malfeasance or misfeasance, the "Board" has enacted and enforced unlawful rules and policies and otherwise participated in conduct that has harmed and continues to harm the Plaintiff. This Defendant is been sued in its "official capacity." This Defendant can be served at Suffolk County Courthouse, 3 Pemberton Square, Suite 707, Boston, MA 02108.

30.     DEFENDANT, WILLIAM F. KENNEDY, JR., or his successor, is the Chairman of the Massachusetts Board of Bar Examiners. KENNEDY is responsible for the day-to-day operations of the Board in carrying out and administering its rules and policies. KENNEDY, by malfeasance or misfeasance, enacted and enforced unlawful rules and policies and otherwise participated in conduct that has harmed and continues to harm the Plaintiff. This Defendant is sued "individually" and in his "official capacities." KENNEDY can be served at Suffolk County Courthouse, 3 Pemberton Square, Suite 707, Boston, MA 02108.

31.     DEFENDANT, ANTHONY G. MASSIMIANO is a member of the Massachusetts Board of Bar Examiners who, by malfeasance or misfeasance, enacted and enforced unlawful rules and policies and otherwise participated in conduct that has harmed and continues to harm the Plaintiff. This Defendant is sued "individually" and in his "official capacities." MASSIMIANO can be served at Suffolk County Courthouse, 3 Pemberton Square, Suite 707, Boston, MA 02108.

32.     DEFENDANT, ALICE E. RICHMOND is a member of the Massachusetts Board of Bar Examiners who, by malfeasance or misfeasance, enacted and enforced unlawful rules and policies and otherwise participated in conduct that has harmed and continues to harm the Plaintiff. This Defendant is sued "individually" and in her "official capacities." RICHMOND can be served at Suffolk County Courthouse, 3 Pemberton Square, Suite 707, Boston, MA 02108.

33.     DEFENDANT, GEOFFREY R. BOK is a member of the Massachusetts Board of Bar Examiners who, by malfeasance or misfeasance, enacted and enforced unlawful rules and policies and otherwise participated in conduct that has harmed and continues to harm the Plaintiff. This Defendant is sued "individually" and in his "official capacities." BOK can be served at Suffolk County Courthouse, 3 Pemberton Square, Suite 707, Boston, MA 02108.

34.     DEFENDANT, MICHAEL K. CALLAHAN is a member of the Massachusetts Board of Bar Examiners who, by malfeasance or misfeasance, enacted and enforced unlawful rules and policies and otherwise participated in conduct that has harmed and continues to harm the Plaintiff. This Defendant is sued "individually" and in his "official capacities." CALLAHAN can be served at Suffolk County Courthouse, 3 Pemberton Square, Suite 707, Boston, MA 02108.

35.     DEFENDANT, THE MASSACHUSETTS SUPREME JUDICIAL COURT, (the "SJC") is the Supreme Judicial Court of the State of Massachusetts. According to Massachusetts's statutes, the "SJC" is charged with oversight responsibility over the Board of Bar Examiners.

By malfeasance or misfeasance, the "SJC" has enacted and enforced an unlawful law, rule and policy otherwise participated in conduct that has harmed and continues to harm the Plaintiff. This Defendant can be served at John Adams Courthouse, 1 Pemberton Square,

Boston, MA 02108.

36.     DEFENDANT, MARGARET H. MARSHALL, Chief Justice, Massachusetts Supreme Judicial Court, is charged with oversight responsibility over the Board of Bar Examiners.

By malfeasance or misfeasance, MARSHALL has enacted and enforced an unlawful law, rule and policy and otherwise participated in conduct that has harmed and continues to harm the Plaintiff. This Defendant is sued "individually" and in her "official capacities." This Defendant can be served at John Adams Courthouse, 1 Pemberton Square, Boston, MA 02108.

37.     DEFENDANT, RODERICK L. IRELAND, Associate Justice, Massachusetts Supreme Judicial Court, is charged with oversight responsibility over the Board of Bar Examiners.

By malfeasance or misfeasance, IRELAND has enacted and enforced an unlawful law, rule and policy and otherwise participated in conduct that has harmed and continues to harm the Plaintiff. This Defendant is sued "individually" and in his "official capacities."  This Defendant can be served at John Adams Courthouse, 1 Pemberton Square, Boston, MA 02108.

38.     DEFENDANT, JUDITH A. COWIN, Associate Justice, Massachusetts Supreme Judicial Court, is charged with oversight responsibility over the Board of Bar Examiners.   By malfeasance or misfeasance, COWIN has enacted and enforced an unlawful law, rule and policy and otherwise participated in conduct that has harmed and continues to harm the Plaintiff. This Defendant is sued "individually" and in her "official capacities." This Defendant can be served at John Adams Courthouse, 1 Pemberton Square, Boston, MA 02108.

39.     DEFENDANT, JOHN M. GREANEY, Associate Justice, Massachusetts Supreme Judicial Court, is charged with oversight responsibility over the Board of Bar Examiners.  By

8

malfeasance or misfeasance, GREANEY has enacted and enforced an unlawful law, rule and policy and otherwise participated in conduct that has harmed and continues to harm the Plaintiff. This Defendant is sued "individually" and in his "official capacities." This Defendant can be served at John Adams Courthouse, 1 Pemberton Square, Boston, MA 02108.

40.     DEFENDANTS, JOHN DOES TWENTY-NINE THROUGH THIRTY-NINE, are individual(s) and/or government organization(s) who have acted in concert with the above named "Defendants" and who may be directly or vicariously liable for enacting and/or enforcing unlawful laws, rules and policies. The above named "Defendants," are been sued "individually" and in their "official capacities."

## III. JURISDICTION

41.     Jurisdiction of the Federal Court is pursuant to 28 U.S.C. § 1331; 28 U.S.C. §1343; and 28 U.S.C. §1367 to consider violations of Article I, § 8, cl. 3 of the Constitution of the United States; Article I, § 10 of the Constitution of the United States; Article IV of the Constitution of the United States; Article VI of the Constitution of the United States; Numerous Amendments of the Bill of Rights of the Constitution of the United States that have been incorporated to the States through the Fourteenth Amendment; and Title 42, § 1983 of the United States Code.

> 28 U.S.C. § 1331: provides that "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States."
>
> 28 U.S.C. § 1343 provides as follows: (a) The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
>
> (1) To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42;
>
> (2) To recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42; which he had knowledge were about to occur and power to prevent;
>
> (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

9

**(4)** To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

28 U.S.C. § 1367 provides as follows:  (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

**(b)** In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

**(c)** The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if— **(1)** the claim raises a novel or complex issue of State law, **(2)** the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, **(3)** the district court has dismissed all claims over which it has original jurisdiction, or **(4)** in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

**(d)** The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

**(e)** As used in this section, the term "State" includes the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States.

42 U.S.C. § 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state or territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction hereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding or redress, except that in any action brought against a judicial officer or an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."

U.S. Const., Article I, Section 10, Section 8, Clause 3: provides "The Congress shall have power 'To regulate commerce with foreign nations, and among the several states, and with the Indian tribes.'"

U.S. Const., Article I, Section 10: provides "No state shall enter into any treaty, alliance, or confederation; grant letters of marque and reprisal; coin money; emit bills of credit; make anything but gold and silver coin a tender in payment of debts; pass any bill of attainder, ex post facto law, or law impairing the obligation of contracts, or grant any title of nobility.  No state shall, without the consent of the Congress, lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing it's inspection laws: and the net produce of all duties and imposts, laid by any state on imports or exports, shall be for the use of the treasury of the United States; and all such laws shall be subject to the revision and control of the Congress.  No state shall, without the consent of Congress, lay any duty of tonnage, keep troops, or ships of war in time of peace, enter into any agreement or compact with another state, or with a foreign power, or engage in war, unless actually invaded, or in such imminent danger as will not admit of delay."

U.S. Const., Article VI, Section 2 provides: "The citizens of each state shall be entitled to all privileges and immunities of citizens in the several states."

10

U.S. Const., Article VI provides: "All debts contracted and engagements entered into, before the adoption of this Constitution, shall be as valid against the United States under this Constitution, as under the Confederation. This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding."

U.S. Const., Amendment I provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances."

U.S. Const., Amendment V provides: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

U.S. Const., Amendment XIV, Section 1 provides: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

42.     Jurisdiction of the Federal Court is pursuant to 28 U.S.C. § 1331; 28 U.S.C. §1343; and 28 U.S.C. §1367 to consider violations of Article I, § 8, cl. 3 of the Constitution of the United States; Article I, § 10 of the Constitution of the United States; Article IV of the Constitution of the United States; Article VI of the Constitution of the United States; Numerous Amendments of the Bill of Rights of the Constitution of the United States that have been incorporated to the States through the Fourteenth Amendment; and Title 42, § 1983 of the United States Code.

43.     Plaintiff contends that 42 U.S.C. § 1983 affords Plaintiff a private cause of action to vindicate Plaintiff's constitutional rights, privileges, and immunities that have been violated by the "Defendants."

44.     Plaintiff's claim is based on the fact that 1) the "Defendants" acted "under color of" state law, and (2) the "Defendants" action deprived the Plaintiff of some right, privilege, or immunity secured by the Constitution (or federal "laws) of the United States. *Monroe v. Pape*, 365 U.S. 167 (1961); *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *Howerton v. Gabica*, 708 F.2d 380, 382 (9th Cir. 1983).

45.     Plaintiff is suing governmental employees and entities in their individual capacities and also in their official capacities for conduct pursuant to their governmental duties and powers. Government employees act under color of law when performing their duties, whether they act in compliance with state law, contrary to it, or exercise professional discretion. *West v. Atkins*, 487 U.S. 49–50 (1988).

46.     Plaintiff's claim that defendant's acts violated his constitutional rights is supported by federal question jurisdiction under 28 U.S.C. § 1331. *Bivens v. Six Unknown FBI Narcotics Agents*, 403 U.S. 388 (1971).

47.     The term "laws" of the United States as used in 28 U.S.C. § 1331 includes the common law of the United States, so that a case turning on the application of federal common law presents a federal question. *Illnois v. City of Milwaukee*, 406 U.S. 91, 105-106 n.6, (1972).

48.     A claim is one "arising under" one of the applicable federal sources of law for the purposes of 28 U.S.C. § 1331 if: (1) a federal law creates the plaintiff's cause of action,[1] or (2) a state law creates the cause of action, but a federal law is a necessary element of plaintiff's claim. *Smith v. Kansas City Title & Trust Co.*, 255 U.S.180, 199 (1921).  A claim that is expressly premised on state law may raise a federal question if the resolution of some federal issue is necessary to the decision of the state claims. *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005).

---

[1] *See Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 464 U.S. 1, 8-9 (1983) (28 U.S.C. § 1331 applies when federal law creates the cause of action);

49.     On the statutory (color of law) requirement, the "Defendants" were performing their governmental duties[2] when "Defendants" violated the Constitution. For purposes of 42 U.S.C. § 1983, the "state action" and "color of law" requirements typically collapse into one another and are satisfied when an action is brought against a state or local official for a violation of the Bill of Rights when they are carrying out their respective governmental duties. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982).

50.     Plaintiff contends that the Fourteenth Amendment is violated by those who exercise state or local government power and who happen to act contrary to the command of state law when doing so.

51.     Plaintiff contends that Defendants misused their respective power(s) possessed to do a wrong forbidden by the Constitution. Defendants "abuse of power" was "under color of" law for purposes of 42 U.S.C. § 1983. Congress meant to reach those who acted under the guise or pretense of lawful authority, and not just those who were acting pursuant to established law, custom, or policy. *Monroe v. Pape,* 365 U.S. 167 (1961).

52.     "Defendants" acts violated Plaintiff's numerous constitutional rights protected by the United States Constitution.

53.     Plaintiff's claim illustrates that the Due Process Clause of the Fourteenth Amendment encompasses three kinds of federal claims enforceable through 42 U.S.C. § 1983: (1) claims for the deprivation of certain specific rights denoted in the Bill of Rights and made applicable to the states through incorporation; (2) claims under the substantive component of the due process clause "that bars certain arbitrary, wrongful government actions, 'regardless of the fairness of the procedures used to implement them'"; and (3) claims under the procedural component of the due process clause that prohibits the deprivation of life, liberty, or property without fair procedure.

---

[2](the SJC carried out its judicial review task in passing the *Goodridge* decision and also when it carried out its oversight responsibility task in regard to supervising the Board's actions on the Feb/March 2007 Bar Examination)(the Board carried out it's task in preparing and administering the Feb/March 2007 Bar Examination)

*Zinermon v. Burch*, 494 U.S. 113, 124 (1990) (*quoting Daniels v. Williams*, 474 U.S. 327, 331 (1986)).

54.     Although 42 U.S.C. § 1983 does not require Plaintiff to exhaust state remedies that might be available to him before bringing suit under 42 U.S.C. § 1983, the Plaintiff has nonetheless exhausted state remedies in the case at bar by requesting that the Board of Bar Examiners reexamine and reconsider his examination. The Board has denied Plaintiff's request to reexamine and reconsider his examination thereby exhausting Plaintiff's state remedies. *Patsy v. Florida Bd. of Regents*, 457 U.S. 496 (1982)(the Supreme Court held that 42 U.S.C. § 1983 does not contain a requirement requiring exhaustion of state administrative remedies).

55.     Plaintiff contends that 42 U.S.C. § 1983 affords Plaintiff a private cause of action to vindicate Plaintiff's constitutional rights, privileges, and immunities that have been violated by the "Defendants."

56.     Plaintiff's contends that "Defendants" actions violate the dormant commerce clause and are therefore actionable under Title 42, § 1983 of the U.S. Code. In *Dennis v. Higgins*, 498 U.S. 439 (1991) the Supreme Court held that the commerce clause is not only a "power allocating provision, giving Congress preemptive authority," but is also a provision that confers rights, privileges, and immunities within the meaning of 42 U.S.C. § 1983. *Id.* at 447. Recent cases have recognized that employment is an area that Congress may regulate under the Commerce Clause. *EEOC v. Wyoming*, 460 U.S. 226, 243 (1983).

57.     Plaintiff alleges that "Defendants" have imposed a state law that amounts to a sociopolitical tax with discriminatory economic consequences upon out-of-staters. The state law in question violates the "dormant" Commerce Clause of Article I, § 8, cl.3 contained within the United States Constitution.

58.     Plaintiff contends that violations of the dormant commerce clause are actionable under Title 42, § 1983 of the U.S. Code. *Dennis v. Higgins*, 498 U.S. 439 (1991)(The Supreme Court has allowed section 1983 actions to redress "dormant" Commerce Clause violations—claims that state or local regulations discriminate against or unduly burden interstate commerce). The dormant commerce clause is the principle that state and local laws are unconstitutional if they place and undue burden on interstate commerce. The framers were most concerned about stopping protectionist state legislation where a state would discriminate against out-of-staters to benefit its citizens at the expense of out-of-staters. The Supreme Court has made it clear that State laws discriminating against interstate commerce and out-of-staters are virtually per se invalid. *Fulton Corp. v. Faulkner,* 516 U.S. 325, 331 (1996), *quoting Oregon Waste Sys., Inc. v. Department of Envtl. Quality of Or.*, 511 U.S. 93, 99 (1994), *Granholm v. Heald*, 125 S. Ct. 1885, 1897 (2005).

59.     Plaintiff alleges that the state law in question as applied to the bar examination imposes a discriminatory and retaliatory barrier on out-of-staters that directly and indirectly affects interstate commerce. *DiSanto v. Pennsylvania*, 273 U.S. 34 (1927)(the Court held that the state law was unconstitutional because it has a direct effect on interstate commerce).

60.     Plaintiff contends that even if the state law in question is facially neutral in that its terms treat in-staters and out-of-staters alike, the state law is nonetheless discriminatory because of its purpose and/or effect on interstate commerce. The Supreme Court has found that facially neutral state and local laws to be discriminatory based on their purpose and/or effect. *See, e.g., C & A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383 (1994)

61.     Plaintiff alleges that the state law in question has both a protectionist purpose and a discriminatory impact. Most recently, in *Granholm v. Heald*, the Supreme Court held that

protectionist legislation clearly violates the dormant commerce clause. *Granholm v. Heald*, 125
S. Ct. 1885 (2005).

62.     Plaintiff contends that the state law in question has a discriminatory impact upon out-of-
staters even though the law as proscribed   may equally discriminate against in-staters. *Dean's
Milk Co. v. Madison*, 340 U.S. 349 (1951).  In *Dean's Milk Co. v. Madison*, the Court considered
a city's ordinance that required that all milk sold in the city had to be pasteurized within five
miles of the city. The law-prevented milk that was pasteurized in other states from been sold in
the city, but it also precluded milk that was pasteurized in other parts of that state from being sold
in the city. Nonetheless, the Court concluded that the law was discriminatory against out-of-
staters. The Court said: "In thus erecting an economic barrier protecting a major local industry
against competition from without the State, Madison plainly discriminates against interstate
commerce."  In a footnote, the Court said that it was irrelevant that the law also discriminate
against in-staters: "It is immaterial that Wisconsin milk from outside the Madison area is
subjected to the same proscription as that moving in interstate commerce." *Id*. at 354 n.4.

63.     Plaintiff contends that the state law in question, as applied to the Massachusetts Bar
Examination, imposes a discriminatory and retaliatory barrier on out-of-staters that directly and
indirectly affects interstate commerce.

64.     Plaintiff contends that the law in question excludes virtually all out-of-staters from
participating in the legal market in Massachusetts. The law in question is motivated by a
protectionist purpose, helping in-staters at the expense of out-of-staters. The Court also has made
it clear that local regulations that treat out-of-staters in a disparate manner will be treated as
discriminatory even though they also discriminate against those in other parts of that state.

65.     Plaintiff alleges that "Defendants" have imposed a state law that is a sociopolitical tax
with discriminatory economic consequences upon out-of-staters. A tax is a burdensome or heavy

demand exacted by the state or federal government. The sociopolitical tax exacted by the State of Massachusetts imposes a discriminatory and retaliatory barrier on out-of-staters, which directly and indirectly affects interstate commerce. The sociopolitical tax excludes virtually all out-of-staters from participating in the legal market in Massachusetts.

66.     Plaintiff contends that the state law in question is a discriminatory tax on interstate commerce and therefore unconstitutional. The Supreme Court has made it clear that states cannot use their tax systems to help in-state businesses at the expense of out-of-state businesses.

*See, e.g., Hale v. Bimco Trading, Inc.*, 306 U.S. 375, 380-381 (1939).  The Supreme Court has declared: "No State, consistent with the Commerce Clause, may impose a tax which discriminates against interstate commerce...by providing a direct commercial advantage to local business." *Boston Stock Exchange v. State Tax Commission*, 429 U.S. 318, 329 (1977)(citations omitted).

67.     Plaintiff contends that the state law in question affects subject matter of national import and is therefore invalid under the Dormant Commerce Clause. *Cooley v. Board of Wardens*, 53 U.S. (12 How.) 299 (1851)(the Court held that state laws that affect subject matter of national import are invalid under the Dormant Commerce Clause).

68.     Plaintiff contends that Defendants violated Article IV of the interstate Privileges and Immunities Clause. *O'Reilly v. Board of Appeals*, 942 F.2d 281 (4th Cir. 1991)(4th Circuit extending section 1983 claims under Article IV's interstate Privileges and Immunities Clause which guarantees equality of treatment as between in-staters and out-of-staters with respect to certain rights).

69.     Plaintiff contends that Defendants violated the Supremacy Clause of the United States Constitution. U.S. Const. art. VI, cl. 1. *See Golden State Transit Corp v. Los Angeles*, 493 U.S.

103 (1989) (the Court held that pre-emption claims are actionable under 42 U.S.C. § 1983 because they present violations of rights under federal "laws.").

70.    Plaintiff alleges that the state government is acting in violation of federal law, pursuant to an unconstitutional statute, law or otherwise. Plaintiff alleges that state officers have no authority to violate the Constitution and laws of the United States.

71.    Plaintiff files suit to enjoin the impermissible behavior by naming the state officer(s) responsible for executing the state policy as the defendant(s). Hence, their illegal acts are stripped of state authority, and therefore not precluded by the Eleventh Amendment. *Ex parte Young*, 209 U.S. at 159-160.

72.    Plaintiff alleges that the act to be enforced is alleged to be unconstitutional, and if it be so, the use of the name of the state to enforce an unconstitutional act to the injury of the complainant is a proceeding without the authority of and one which does not affect the State in its sovereign or governmental capacity. It is simply an illegal act upon the part of a state official in attempting to use the name of the State to enforce a legislative enactment which is void because unconstitutional. The illegal act upon the part of the state official(s) is a violation of the Federal Constitution. The officer(s) is thereby stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States.

73.    Plaintiff alleges that the "Defendants" individual conduct is not entitled to Eleventh Amendment immunity although "Defendants" individual conduct is nonetheless state action for purposes of the Fourteenth Amendment. *Home Telephone & Telegraph v. Los Angeles*, 227 U.S. 278 (1913). Under *Ex parte Young*, the officer is stripped of state authority solely for purposes of Eleventh Amendment analysis, a result that does not affect the determination of state action under the Fourteenth Amendment. It is clearly established that suits against state officers

18

are permitted for violations of both federal statutes and the United States Constitution. *See, e.g., Green v. Mansour*, 474 U.S. at 68 (injunctive relief is available to enforce federal laws).

74. Plaintiff alleges that the "*Pullman Abstention Doctrine*," *Railroad Commission v. Pullman, Co., 312 U.S. 496 (1941)*, does not apply in this case because, unlike *Pullman*, the "Defendants" (Massachusetts Supreme Judicial Court) has already had an opportunity to eliminate the constitutional problem that is inconsistent with the Massachusetts Constitution and the United States Constitution and neglected to do so. [3]

75. Plaintiff alleges that the *Pullman Abstention Doctrine* does not apply where the State law being challenged is sufficiently clear. Plaintiff is challenging Defendants conduct only on federal constitutional grounds (leaving out state claims).

76. Plaintiff contends that the state court's resolution of the matter is still constitutionally suspect thereby enabling the federal court to retain jurisdiction to hear the constitutional issues in the case.

77. Plaintiff contends that *Pullman Abstention Doctrine* does not apply in this case. *Compare Wisconsin v. Constantineau*, 400 U.S. 433, 439 (1971), *with id.* at 440–43 (Burger, C.J., dissenting).

78. Plaintiff alleges that the "*Thibodaux and Burford Abstention Doctrine*," *Louisiana Power & Light Co. v. Thibodaux*, 360 U.S. 25 (1959) and *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943) does not apply in this case because *Thibodaux abstention* appears to be justified only where the issue of state law is unclear;[4] and *Burford abstention* is inapplicable to the case at bar because

---

[3] "In a 50-page, 4-3 ruling delivered on November 18, 2003, the Massachusetts Supreme Judicial found that Massachusetts may not "deny the protections, benefits and obligations conferred by civil marriage to two individuals of the same sex who wish to marry. The court held that the denial of marriage licenses to homosexual couples violated provisions of the state constitution guaranteeing individual liberty and equality, and was not rationally related to a legitimate state interest."

[4] *See Allegheny County v. Frank Mashuda Co.*, 360 U.S. 185, 188–90 (1959).

19

federal intervention would provide uniformity and consistency thereby assisting the state with its efforts to establish a coherent policy with respect to a matter of substantial public concern.

79.    Plaintiff alleges that the "*Younger Abstention Doctrine*," *Younger v. Harris*, 401 U.S. 37 (1971), does not apply in this case because, unlike the coercive bar discipline proceedings in *Middlesex County Committee v. Garden State Bar Association*, 457 U.S. 423 (1982), and the criminal proceedings in *Younger*, the plaintiff, not the state, has been responsible for initiating and prosecuting the bar application. The Plaintiff's challenge to the Board's reasons for denial, is thus *remedial* and not coercive in nature.[5] The Supreme Court enunciated in *Younger* that it remains "the rule that only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States." *Id.* at 368. There is "[n]o more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the Constitution." *Id.* at 358 (quoting *Cohens v. Virginia*, 6 Wheat. 264, 404 (1821)).

80.    Plaintiff contends that the law that has been enforced is utterly and irredeemably unconstitutional and an exception to *Younger* abstention exists where the state tribunal cannot or will not entertain the federal constitutional claims. *Moore v. Sims*, 442 U.S. 415, 425–26 (1979).

81.    Plaintiff alleges that the "*Colorado River Abstention*," *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), does not apply in this case because the state court cannot adequately protect the constitutional rights of the Plaintiff and the federal courts have a virtual unflagging obligation to exercise jurisdiction in cases that present questions of profound constitutional import to ensure national peace and harmony.

82.    Plaintiff alleges that the "*Rooker-Feldman Abstention Doctrine*," *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), does not apply in this case because the Plaintiff's claim is merely "a general challenge to

---

[5] *See Smolow v. Hafer*, 353 F. Supp. 2d 561, 571-572 (E.D. Penn. 2005)(and cases cited therein), *Torres v. Carrison*, 376 F. Supp. 2d 209, 213 (D.P.R. 2005). *See also*, *Exec. Art Studio, Inc. v. City of Grand Rapids*, 179 F. Supp. 2d 755, 758-762 (W.D. Mich. 2001).

the constitutionality of the state law applied in the state action," rather than a challenge to the law's application in a particular state case. In determining the applicability of the *Rooker-Feldman* doctrine, federal courts "must pay close attention to the *relief* sought by the federal-court plaintiff." *Id*. at 597 (citations omitted)(emphasis in original).

83.     Plaintiff alleges that the *Rooker-Feldman* is inapplicable because the Plaintiff is asking the court to assure the he will no longer be subjected to the state law's unconstitutional effects.

84.     Plaintiff seeks prospective relief so that he can engage in protected First Amendment activities without state interference.

85.     Plaintiff alleges that for the same reasons that *Younger*, is inapplicable here, the "*Exhaustion of Administrative Remedies Doctrine*" does not apply. *See Patsy vs. Board of Regents*, 457 U.S. 496, (1982).

86.     Plaintiff alleges that the State of Massachusetts does not offer a judicial remedy in the case of a denial of admission to the Bar: qualifying for the Bar in Massachusetts is entirely administrative in nature from start to finish; being regulated in accordance with Massachusetts General Law, Chapter 221, Section 35-36. Since Plaintiff has already exhausted all administrative remedies available by requesting reconsideration of his examination to no avail and since no state judicial court has acted, or will ever act, on the Plaintiff's claim of a present right to admission to the practice of law, the denial of that right is a case or controversy within the meaning of Article III of the Constitution of the United States, and this court has jurisdiction to award all of the relief requested.  Plaintiff has reserved his federal claims for litigation in this court pursuant to *England vs. Lousiana Board of Medical Examiners*, 375 U.S. 411 (1964). Federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress.  *See, e.g., Colorado River*, 424 U.S., at 821 ("[F]ederal courts have a virtually unflagging obligation to exercise the jurisdiction given them'"); *England v. Louisiana Bd. of*

21

*Medical Examiners*, 375 U.S. 411, 415 (1964) ("'When a federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction'") (*quoting Willcox v. Consolidated Gas Co.*, 212 U. S. 19, 40 (1909)); *Cohens v. Virginia*, 6 Wheat. 264, 404 (1821) (federal courts "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not"). Id.

87.     Plaintiff alleges that the *"Domestic Relations Exception,"* is inapplicable to the case at bar and as such does not restrict the court's subject matter jurisdiction. In *Ankenbrandt v. Richards*, 504 U.S. 689, 691 (1992), the Supreme Court rejected the argument that the domestic relations exception was constitutionally mandated. *Id.* at 699–700. In so holding, the Court relied on the plain language of Article III, § 2 of the Constitution, which "contains no limitation on subjects of a domestic relations nature."*Id.* at 695. The Court reasoned that since it had previously found that it had jurisdiction over appeals from territorial courts involving divorce, and that it had upheld the exercise of original jurisdiction by federal courts in the District of Columbia over divorce actions, the power to hear such cases must be within Article III's grant of subject matter jurisdiction. *Id.* at 696–97.

88.     Plaintiff requests that the court protect claimants' federal statutory and constitutional rights guaranteed by the United States Constitution.

## VI.  VENUE

89.     Under the current venue statute, 28 U.S.C.A. § 1391(b), the proper federal judicial district to bring a Section 1983 suit is the one in which the defendant resides, or, if there is more than one defendant and they reside in the same state, in the district in which any defendant resides.

Venue is proper pursuant to 28 U.S.C.A. § 1391 (b) because all of the defendants can be served in the United States District Court, District of Massachusetts.

## V.   FACTS

90.   Plaintiff has established a prima facie case for good moral character because the Defendants' records show that he has served honorably in United States Army Infantry for six years; he is responsibly employed; he holds two duly issued state licenses that required proof of good moral character; and he is highly regarded in his community, as evidenced by positive recommendations from long standing acquaintances, including several current Massachusetts Bar members.

91.   The Plaintiff is in full compliance with all of the laws of Massachusetts and of the United States, including all tax laws. The Plaintiff has never been convicted of any crime or committed any acts of moral turpitude. Plaintiff holds a Juris Doctor degree from a prestigious Boston law school and is currently matriculating at an esteemed Boston business school, working towards a Master's in Business Administration.

92.   On knowledge and belief, the "Defendants" enacted, enforced and continue to enforce a policy, applicable to all applicants, requiring each applicant to affirmatively accept, condone and promote same sex marriage and same sex parenting as a prerequisite to the practice of law in Massachusetts.

93.   The "Defendants" question unnecessarily imposed and continues to impose a burden on Plaintiff's sincere religious practices, beliefs and Plaintiff's freedom of speech.

94.   The "Defendants" question was invasive and continues to be invasive because it requires the Plaintiff to affirmatively accept, condone, and promote that which the Plaintiff finds morally repugnant and patently offensive.

95.   The "Defendants" question was and continues to be invasive and burdensome because of the impact that is has and continues to have on the Establishment Clause and Free Exercise Clause of the First Amendment.

23

96.     The "Defendants" question is used as a screening device to identify and penalize Plaintiff for refusing to subscribe to a liberal ideology based on "Secular Humanism."

97.     The "Defendants" question has and continues to have an insidious discriminatory deterrent effect on interstate commerce.

98.     Plaintiff's bar application has been denied by the "Defendants," because Plaintiff refused to affirmatively accept, condone and promote same sex marriage and same sex parenting on the Massachusetts Bar Examination.

99.     Plaintiff reasonably believes that the "Defendants" have denied his bar application based on his refusal to support and promote homosexual marriage and parenting. On May 7, 2006, Plaintiff received a letter from John Moore, Executive Director of the Board of Bar Examiners. The letter stated that Plaintiff's entire application would be terminated for failure to obtain 270 points or more on the examination. Termination of Plaintiff's application requires him to retake the bar examination and submit an entirely new application, along with the necessary fees.

100.    The Defendants unlawfully, arbitrarily and capriciously targeted the Plaintiff for punishment based strictly on Plaintiff's refusal to support and promote homosexual marriage and parenting.

101.    Defendants chilled Plaintiff's fundamental free speech rights, defamed the Plaintiff, and assassinated his character without regard to Plaintiff's present fitness for law practice.

102.    At all times relevant to these allegations, the Defendants were operating under color of the Constitution and laws of Massachusetts and the Rules promulgated thereunder with notice and knowledge that their policies, procedures and conduct were unlawful.

## FIRST CAUSE OF ACTION – Const. U.S. Amendment I: 42 U.S.C.§ 1983

103.   Plaintiff claims that "Defendants" invidiously deprived Plaintiff of his First Amendment right to the free exercise of his religion by compelling Plaintiff to disobey his sincere Religious practices and beliefs in order for Plaintiff to successfully pass the Massachusetts Bar Examination and practice law in the State of Massachusetts.

104.   Plaintiff claims that " Defendants" unconstitutional act of forcing Plaintiff to accept, support, and promote Homosexual conduct significantly impairs Plaintiff's First Amendment rights and is inconsistent with "the shared values of a civilized social order. " *Hazelwood School District v. Kuhlmeier*, 484 U.S. 260 (1988).   "Defendants" imposed requirement stipulating mandatory adherence with a particular belief in derogation of the Plaintiff's religious faith trespasses upon fundamental freedoms protected by the First Amendment.

105.   Plaintiff contends that the governmental action in question is an unfair and discriminatory practice. Homosexual conduct is inconsistent with Plaintiff's Christian practices, beliefs and values, which are protected by the First Amendment of the United States Constitution.

106.   Plaintiff contends that compelling the Plaintiff to subsidize his expression with that which he disagrees is tantamount to requiring that he relinquish rights guaranteed him by the First Amendment.

107.   Plaintiff contends that forcing the Plaintiff to supplant his ideological, moral and religious objections in favor of the State's proposition is unequivocal coercion by the State.

108.   Plaintiff contends that the State's activity in question is the unambiguous advancement of an ideological cause that is not germane to the purpose and objective of the Massachusetts Bar Examination.

## **SECOND CAUSE OF ACTION – Const. U.S. Amendment I: 42 U.S.C.§ 1983**

109.    Plaintiff claims that "Defendants" invidiously deprived Plaintiff of his First Amendment

rights in derogation of the Establishment Clause of the First Amendment by advocating

"Defendants" irreligion of "Secular Humanism" over Plaintiff's religion or alternatively

advocating "Defendants" religion of "Secular Humanism" over Plaintiff's religion. [6]

110.    Plaintiff contends that "Defendants" purposely compelled Plaintiff to accept

"Defendants" irreligion/religion of "Secular Humanism," by compelling Plaintiff to draft an

affirmative answer to a question on the Massachusetts Bar Examination explicitly and implicitly

accepting, supporting and promoting homosexual marriage and homosexual parenting in order

for Plaintiff to successfully pass the bar examination and practice law in the State of

Massachusetts.

111.    Plaintiff contends that "Neither a State nor the Federal Government can constitutionally

force a person to 'profess a belief or disbelief in any religion.' Neither can constitutionally pass

---

[6] In *Torcaso v. Watkins*, Justice Hugo Black commented in a footnote, "Among religions in this country which do not teach what would generally be considered a belief in the existence of God are Buddhism, Taosim, Ethical Culture, Secular Humanism, and others." *See Torcaso v. Watkins*, 367 U.S. 488 (1961). Justice Hugo Black referenced *Fellowship of Humanity v. County of Alameda*, a 1957 case in which an organization of humanists sought a tax exemption on the ground that they used their property "solely and exclusively for religious worship." Despite the group's non-theistic beliefs, the court determined that the activities of the *Fellowship of Humanity*, which included weekly Sunday meetings, were analogous to the activities of theistic churches and thus entitled to an exemption. See *Fellowship of Humanity v. Co. Alameda*, 153 Cal.App.2d 673 (1957). In 2000, the D.C. Circuit court in *Kalka* v. *Hawk*, considered a line of cases regarding the definition of religion, and specifically whether secular humanism was one. The D.C. Circuit court noted that a particular non-theistic group calling itself the "Fellowship of Humanity" qualified as a religious organization under California law. The Council for Secular Humanism (hereinafter "Council") is a non-profit educational  organization based in Amherst, New York, with affiliates all over the country and the world. The Council is the largest organization in the world representing the interests of nonbelievers. The growth of the Council reflects just one aspect of the increasing nonreligious beliefs in this country and the recognition of Secular Humanism as a religion or alternatively as an irreligion. Secular Humanist's are atheists. Atheism is the position that either affirms the nonexistence of gods or rejects theism. Atheism is the absence of belief in deities, alternatively called nontheism. Atheists are commonly assumed to be irreligious, although Buddhism, which is a recognized as a religion is characterized as atheistic. Buddhism is a widespread Asian religion originating in northeastern India in the 5th century that has no creator God. Analogous to Buddhism, Secular Humanism is commonly referred to as irreligious, although Secular Humanism, upon close scrutiny and analysis can more aptly recognized as a religion similar to Buddhism. A religion is a set of beliefs and practices generally held by a community, involving adherence to codified beliefs and rituals. The term "religion" refers to both the personal practices related to communal faith and to group rituals and communication stemming from shared conviction. Sociologists and anthropologists tend to see religion as an abstract set of ideas, values, or experiences developed as part of a cultural matrix.

laws or impose requirements which aid all religions as against nonbelievers." *Torcaso v. Watkins*, 367 U.S. 488, 495 (1961). Plaintiff contends that the corollary of this proposition is that a State may not constitutionally pass laws or impose requirements, which aid all irreligions as against religious believers.

112.    Plaintiff contends that the insertion of the question at issue on the Massachusetts Bar Examination is to impose a requirement that aids the religion of "Secular Humanism," as against nonbelievers or alternatively the irreligion of "Secular Humanism," as against believers.

113.    Plaintiff contends that state government actions that favor religious believers over nonbelievers are unconstitutional. *City of Boerne v. Flores*, 521 U.S. 507, 537 (1997) (Stevens, J., concurring).

114.    Plaintiff contends that the Massachusetts state government, "Defendants," in this civil action, are purposely-advancing Secular Humanism's homosexual agenda.

115.    Plaintiff contends that government in our democracy, state and national, must be neutral in matters of religious theory, doctrine and practice. It may not be hostile to any religion or to the advocacy of no religion; and it may not aid, foster, or promote one religion or religious theory against another or even against the militant opposite.

116.    Plaintiff contends that the First Amendment mandates government neutrality between religion and religion, and between religion and nonreligion. *Epperson v. Arkansas*, 393 U.S. 97, 103-104 (1968).

117.    Plaintiff contends that neither Science nor Religion recognizes homosexuality as immutable; homosexuality is a voluntary human behavior that is changeable. Bisexuals voluntarily engage in relations with members of both sexes by choice, not by genetic predisposition. Societal recognition and perpetuation of rampant homosexuality is neither prudent nor wise.

118.    Plaintiff contends that the Massachusetts state government advocating the normalization of homosexual behavior on the Massachusetts Bar Examination is disingenuous considering the fact that homosexuality is neither in born or hereditary in nature. Postulating otherwise is patently false and devoid of scientific validity.

119.    Plaintiff contends that the employment of the machinery of the State to enforce a religious orthodoxy or irreligious orthodoxy is unquestionably unconstitutional. *Lee v. Weisman*, 505 U.S. at 592.

### THIRD CAUSE OF ACTION – Const. U.S. Amendment I: 42 U.S.C.§ 1983

120.    Plaintiff contends that "Defendants" have invidiously deprived Plaintiff of his First Amendment rights guaranteed by the United States Constitution by suppressing Plaintiff's expressive and associational rights on the Massachusetts Bar Examination by including a question that had and continues to have the invidious discriminatory effect of preventing Plaintiff from communicating an intelligible analysis of the questioned legal issue posited on the examination thereby violating Plaintiff's First Amendment rights and denying Plaintiff's right to a fair licensing procedure.

### FOURTH CAUSE OF ACTION – Const. U.S. Amendment I: 42 U.S.C.§ 1983

121.    Plaintiff claims that "Defendants" invidiously deprived Plaintiff of his First Amendment rights guaranteed by the United States Constitution by compelling Plaintiff to draft an affirmative answer to a question on the Massachusetts Bar Examination explicitly and implicitly accepting, condoning, supporting and promoting homosexual marriage and homosexual parenting in order for Plaintiff to successfully pass the bar examination and practice law in the State of Massachusetts.

122.    Plaintiff contends that the Massachusetts courts have previously ruled in favor of the Irish-American Gay, Lesbian and Bisexual Group of Boston contending that the Irish-American Gay, Lesbian and Bisexual Group of Boston had a right pursuant to the Massachusetts public accommodations law to march in the St. Patrick's Day parade.

123.    Plaintiff contends that the Supreme Court unanimously reversed that decision. *See Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston*, 515 U.S. 557 (1995)(The Court held that the Massachusetts state court violated the organizers' First Amendment right to exclude "a group imparting a message the organizers do not wish to convey.") *Id. Hurley* is illustrative of the point that Massachusetts state government may not propound a particular viewpoint upon an individual. *Id*.

124.    Plaintiff contends that the Massachusetts state government's mandatory acceptance, support and promotion of homosexual conduct on the Massachusetts Bar Examination as a legitimate form of behavior propounds a particular viewpoint on the Plaintiff in violation of his First Amendment rights.

125.    Plaintiff alleges that the State of Massachusetts does not have an adequate justification to warrant such a severe intrusion on Plaintiff's Freedom of Speech.

126.    Plaintiff contends that the government may not "require affirmation of a belief and an attitude of mind," nor "force an American citizen publicly to profess any statement of belief," even if doing so does not require the person to "forego any contrary convictions of their own." "[O]ne important manifestation of the principle of free speech is that one who chooses to speak may also decide 'what not to say." *See West Virginia Bd. of Ed. V. Barnette*, 319 U.S. 624 (1943).

### FIFTH CAUSE OF ACTION – Const. U.S. Amendment V: 42 U.S.C.§ 1983

127.    Plaintiff claims that "Defendants" have invidiously denied Plaintiff's legitimate claim of entitlement to a protectable property and liberty interest without a fair procedure in violation of the Fifth Amendment's Due Process Clause of the United States Constitution.

### SIXTH CAUSE OF ACTION – Const. U.S. Amendment XVI: 42 U.S.C.§ 1983

128.    Plaintiff claims that "Defendants" have invidiously denied Plaintiff's legitimate claim of entitlement to a protectable property and liberty interest without a fair procedure in violation of the Fourteenth Amendment's Due Process Clause and Equal Protection Clause of the United States Constitution.7

### SEVENTH CAUSE OF ACTION – Const. U.S. Art. IV, § 2:

### 42 U.S.C.§ 1983

129.    Plaintiff claims that "Defendants" have inserted an invidiously discriminatory requirement on the Massachusetts Bar Examination that amounts to an undue burden upon interstate commerce thereby depriving Plaintiff of his opportunity to participate in interstate commerce with the state of Massachusetts in violation of the Privileges and Immunities Clause of Art. IV, § 2, of the United States Constitution.[8]

---

[7]    The Due Process Clause of the Fourteenth Amendment encompasses three kinds of federal claims enforceable through 42 U.S.C. § 1983: (1) claims for the deprivation of certain specific rights denoted in the Bill of Rights and made applicable to the states through incorporation; (2) claims under the substantive component of the due process clause "that bars certain arbitrary, wrongful government actions, 'regardless of the fairness of the procedures used to implement them'"; and (3) claims under the procedural component of the due process clause that prohibits the deprivation of life, liberty, or property without fair procedure. *Zinermon v. Burch*, 494 U.S. 113, 124 (1990) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).

[8] *O'Reilly v. Board of Appeals*, 942 F.2d 281 (4th Cir. 1991)(4th Circuit extending section 1983 claims under Article IV's interstate Privileges and Immunities Clause which guarantees equality of treatment as between in-staters and out-of-staters with respect to certain rights).

<u>**EIGHTH CAUSE OF ACTION – Const. U.S. Amendment XIV, § 1:**</u>

<u>**42 U.S.C.§ 1983**</u>

130.     Plaintiff claims that "Defendants" have inserted an invidiously discriminatory requirement on the Massachusetts Bar Examination that amounts to an undue burden upon interstate commerce thereby depriving Plaintiff of his opportunity to participate in interstate commerce with the state of Massachusetts in violation of the Privileges or Immunities Clause of Amend. XIV, § 1, of the United States Constitution.

<u>**NINTH CAUSE OF ACTION – Const. U.S. Art. VI, § 1**</u>

<u>**42 U.S.C.§ 1983**</u>

131.     Plaintiff claims that "Defendants" enactment, reliance and enforcement of *Goodridge v. Dept. of Public Health*, 798 N.E. 2d 941 (Mass. 2003), violates the Supremacy Clause of the United States Constitution and causes a deleterious affect on the Full Faith & Credit Clause and Separation of Powers Doctrine contained within the text of the United States Constitution.

132.     Plaintiff contends that "Defendants" enactment, reliance and enforcement of *Goodridge v. Dept. of Public Health*, 798 N.E. 2d 941 (Mass. 2003), is contrary to the United States Constitution and must be preempted to maintain national peace and harmony.

133.     Plaintiff contends that judicial amendment of the Massachusetts Constitution is a usurpation of federalism, a monopolization of legislative power and profoundly undemocratic. James Madison described the doctrine of separation of powers as one of the principal "auxiliary precautions" against tyrannical government. Madison admonished that the primary safeguard of individual liberty was dependence on the people through the system of elections.  Referring to Charles Louis de Secondat Montesqieu, whom he called the "oracle" of this modern invention in political science, he wrote: "No political truth is certainly of greater intrinsic value, or is stamped with the authority of more enlightened patrons of liberty. The accumulation of all powers,

legislative, executive, and judicial, in the same hands may justly be pronounced the very definition of tyranny."

134. Plaintiff contends that Sensitivity to the diverse interests and preferences of a heterogeneous population demands restraint of judicial activism and deference to the democratic process.

135. Plaintiff contends that the act of the Massachusetts state judiciary is contrary to the manifest tenor of the Massachusetts Constitution and the United States Constitution and must be enjoined as an egregious violation constituting constitutional impropriety. The United States Constitution democratically and geostrategically depends on men other than life tenured judges. The Constitution's strength depends on the individual state judiciaries collectively paying deference to their respective legislatures. Judicial activism undermines republican character of the federal government, whose own institution rest largely on state-law pillars.

136. Plaintiff contends that the United States Constitution shall guarantee to every State in this union a Republican form of government. A true republican form of government derives all its powers directly or indirectly from the great body of people within its borders.

137. Plaintiff claims that "Defendants" enactment, reliance and enforcement of *Goodridge v. Dept. of Public Health*, 798 N.E. 2d 941 (Mass. 2003), violates the Supremacy Clause of the United States Constitution because it is in contravention to the Supreme Court's decision in *Baker v. Nelson*, 409 U.S. 810 (1972).

138. Plaintiff contends that the U.S. Supreme Court has recognized that "[t]he institution of marriage as a union of man and woman, uniquely involving the procreation and rearing of children within a family, is as old as the book of Genesis" (id. at 312).

139. Plaintiff contends that "Defendants" reliance on *Goodridge v. Dept. of Public Health*, 798 N.E.2d 941 (Mass. 2003), an indisputably unconstitutional legal decision is in contravention to

32

the Supreme Court's decision in *Baker v. Nelson,* 409 U.S. 810 (1972) (holding that a State law barring marriage between persons of the same sex does not violate the equal protection or due process guarantees of the United States Constitution).

140. Plaintiff contends that in nearly one hundred and fifty years since the Fourteenth Amendment was adopted, no Justice of the Supreme Court has suggested that a state statute or constitutional provision codifying the traditional definition of marriage violates the Equal Protection Clause or any other provision of the United States Constitution.

141. Plaintiff contends that in *Baker v. Nelson*, 409 U.S. 810 (1972), when faced with a Fourteenth Amendment challenge to a decision by the Supreme Court of Minnesota denying a marriage license to a same-sex couple, the United States Supreme Court dismissed "for want of a substantial federal question." (Emphasis added.) "Unlike a denial of certiorari, a dismissal for want of a substantial federal question constitutes a decision on the merits of the case, and as such, is binding precedent on all lower Federal Courts." Lower Federal Courts are expressly prohibited from ruling in a way inconsistent with binding precedent. "[Summary Decisions] prevent lower courts from coming to opposite conclusions on the precise issues presented and necessarily decided by those actions." *Mandel v. Bradley*, 432 U.S. 173, 176 (1977).

142. Plaintiff contends that *Baker* is binding on all other courts and public officials, establishing that a state law restricting marriage to opposite-sex couples does not violate the federal Constitution's guarantees of equal protection or due process of law. Id. Courts have specifically held that *Baker* is binding precedent in challenges to state marriage statutes. *See, e.g., Sadler*, 821 N.E.2d at 19 (describing *Baker* as 'binding United States Supreme Court precedent indicating state bans on same-sex marriage do not violate the United States Constitution').

143. Plaintiff contends that State domestic relations law that are contrary to the United States Constitution; the clear intent of the Framers; the State legislature that make the laws; and hundreds of years of common law must be pre-empted in order to protect the sanctity of the Union.

144. State domestic relations law that causes an unprecedented avowal by State legislatures to disrespect and refuse to adhere to Article IV of the United States Constitution is an unambiguous illustration of the deleterious effect that *Goodridge* has on the rule of law in American jurisprudence and should therefore be preempted to maintain national peace and harmony.

145. Plaintiff contends that the institution of marriage transcends judicial intervention, and its definition should not be made the subject of political experimentation in state laboratories.

146. Plaintiff contends that the United States government should not be compelled to defend itself from an indisputably unconstitutional legal decision.

147. Plaintiff contends that unconstitutionally amending the Massachusetts Constitution is a preemptive attack on the several state Constitutions and the United States Constitution, which ultimately weakens the power and influence of these sacred documents. Judicially imposed "Amendments" foisted upon the people undercut the ability of the remaining provisions to protect our Liberty.

148. Plaintiff contends that individual rights contained in the Massachusetts State Constitution may be changed by state legislative action or constitutional procedures, not by a politically motivated judiciary, whom is unaccountable to the people of the commonwealth. Judicial review is limited to review and does not include the unlimited right to legislate, that duty is properly left unto the legislature. The protection of liberty requires more than a mere profession of fealty to the written constitution.

34

149.   Plaintiff contends that the federal Defense of Marriage Act, along with similar laws in 42

other states stand for the proposition that same-sex marriages performed in Massachusetts are

not recognized under the "full faith and credit" clause of the federal Constitution.  According to

the Defense of Marriage Act, "No state (or other political subdivision within the United States)

need recognize a marriage between persons of the same sex and the Federal Government may

not recognize same-sex marriage even if concluded or recognized by one of the states. 'In

determining the meaning of any Act of Congress, or of any ruling, regulation, or interpretation

of the various administrative bureaus and agencies of the United States, the word 'marriage'

means only a legal union between one man and one woman as husband and wife, and the word

'spouse' refers only to a person of the opposite sex who is a husband or a wife.'[9] The majority of

the several states have adopted DOMA as state law.  Since the enactment of the federal DOMA

in 1996, 42 states have enacted state constitutional amendments prohibiting same-gender civil

marriage, civil union, and domestic partnerships.

150.   Plaintiff contends that efforts to amend the constitutions of these states were undertaken

in an effort to prohibit judges from usurping the power of the legislature and legislating

morality.[10]

---

[9] Defense of Marriage Act, or DOMA is the commonly used name of a federal law of the United States that is officially known as Pub. L. No. 104-199, 110 Stat. 2419 (Sept. 21, 1996) and codified at 1 U.S.C. § 7 and 28 U.S.C. § 1738C.  The bill was passed by Congress by a vote of 85-14 in the Senate and a vote of 342-67 in the House of Representatives, and was signed by President Bill Clinton on September 21, 1996.  'No State, territory, or possession of the United States, or Indian tribe, shall be required to give effect to any public act, record, or judicial proceeding of any other State, territory, possession, or tribe respecting a relationship between persons of the same sex that is treated as a marriage under the laws of such other State, territory, possession, or tribe, or a right or claim arising from such relationship.'

[10] Alaska, Florida, Indiana, Nebraska, South Dakota, and West Virginia define marriage as a legal union between a man and woman and prohibit recognition of same-gender marriages granted by other states.  Idaho, Louisiana, Montana, and South Carolina prohibit recognition of same-gender marriages granted by other states and declare same-gender marriages a violation of the state's public policy.  Colorado, Kansas, and Tennessee laws define marriage as a legal union between a man and a woman and declare same-gender marriage a violation of the state's public policy. North Dakota law defines marriage as a legal union between a man and a woman, and spouse as only a person of the opposite gender who is legally married as a wife or husband. (Florida, North Dakota, and Texas are the only states that have adopted the federal DOMA definition of spouse as only a person of the opposite gender who is legally married as a wife or husband.)  Arizona, Delaware, Illinois, Maine, Mississippi, North Carolina, Oklahoma, Texas, Utah, and Virginia laws prohibit the recognition of same-gender marriages granted by other states. California,

35

151. Plaintiff contends that the deleterious effect of *Goodridge* is clearly demonstrated from the fact that the United States government has unanimously denounced a sacrosanct doctrine of federalism (Article VI Full Faith & Credit Clause) contained within the United States Constitution to protect against judges from usurping the power of the legislature and legislating morality. Alexander Hamilton emphatically stated that: ""No state legislator or executive or judicial officer can war against the Constitution without violating his undertaking to support it." (Hamilton, The Federalist No. 78 (Willis ed. 1982) p. 394.)

152. Plaintiff contends that the United States Constitution, itself, immediately commands the unqualified obedience of state officials in article VI, section 3, which declares that "all executive and judicial officers, both of the United States *and of the several states*, shall be bound by oath or affirmation, to support this Constitution . . . ." Plaintiff contends that the federal court(s) are charged with the authority and responsibility under *Marbury v. Madison*, 5 U.S. 137 (1803), to resolve the current constitutional impropriety committed by the Massachusetts Supreme Judicial Court.

153. Plaintiff contends that the Massachusetts Supreme Judicial Court unilaterally amended the Massachusetts Constitution and established homosexuality as an accepted legal and moral practice that is supported by the taxation of the people.

154. Plaintiff contends that the legislative act committed by the Massachusetts Supreme Judicial Court is squarely prohibited by Article XXX of the Massachusetts Constitution. Article XXX of the Massachusetts Constitution states: "In the government of this commonwealth, the

---

Hawaii, Iowa, Minnesota, Nevada, and Washington laws define marriage as a legal union between a man and woman. Before passage of the federal DOMA, Maryland, New Hampshire, and Wyoming enacted laws to prohibit same-gender civil marriage. An Ohio statute, replicated with a state constitutional amendment, prohibits same-gender civil marriages, civil unions, and domestic partnerships. Ohio's 2004 marriage amendment reads, "Only a union between one man and one woman may be a marriage valid in or recognized by this state and its political subdivisions. This state and its political subdivisions shall not create or recognize a legal status for relationships of unmarried individuals that intends to approximate the design, qualities, significance or effect of marriage."

judicial department shall never exercise the legislative power....to the end it may be a government of laws and not of men.

155. Plaintiff contends that the Massachusetts Constitution was ordained by the voters themselves and it was contemplated from its inception that changes to the Constitution would require the approval of the people. The Massachusetts Constitution is founded upon the assent and ratification of the people through their elected representatives. It is the transcendent and precious right of the people to 'abolish or alter their government,' when the government defiantly modifies the Constitution without due regard to the consent of the people.

156. Plaintiff contends that Supporters of homosexual marriage have successfully legislated morality through the Massachusetts Supreme Judicial Court.

157. Plaintiff contends that this act is an unconstitutional violation of the Massachusetts Constitution by the Massachusetts Supreme Judicial Court.

158. Plaintiff contends that a republican government is not merely a government of the people, but it is a free government. Judicial activism usurps the power of the legislature, thereby diminishing the rule of law and democracy. An unelected judicial branch has no legitimate ground to usurp the power from the people. The predilections of unelected judges cannot be allowed to subvert the rule of Law. ("We, therefore, the people of Massachusetts do agree upon, ordain, and establish the Constitution of the Commonwealth of Massachusetts"). Cf. Mass. Const. (1780), Preamble. This single sentence illustrates the recognition of popular rights better than a volume of aphorisms. The people have an indubitable, unalienable, and indefeasible right to reform or change their government. Judges should not legislate or invent law without the People's imprimatur. Unlike Socialist law where the interpretation of the law is ultimately political, the United States allocates that responsibility to the legislature.

159.  Plaintiff claims that "Defendants" enactment, reliance and enforcement of *Goodridge v. Dept. of Public Health*, is indisputably unconstitutional.

## TENTH CAUSE OF ACTION – Const. U.S. Article I, § 8, cl. 3:

### 42 U.S.C.§ 1983

160.    Plaintiff claims that "Defendants" have imposed and continue to impose illegal state regulations on interstate commerce thereby violating Plaintiff's rights, privileges, and immunities contained within the Dormant Commerce Clause Article I, § 8, cl.3. 11

## ELEVENTH CAUSE OF ACTION – Const. U.S. Article I, § 10:

### 28 U.S.C. § 1331 & § 1343

161.  Plaintiff claims that "Defendants" have imposed illegal state regulations on interstate commerce thereby violating Plaintiff's rights, privileges, and immunities contained within the Obligation of Contracts Clause of Article I, Sec. 10 of the Constitution of the United States.

---

[11] In *Dennis v. Higgins*, 498 U.S. 439 (1991) the Supreme Court held that the commerce clause is not only a "power allocating provision, giving Congress preemptive authority," but is also a provision that confers rights, privileges, and immunities within the meaning of 42 U.S.C. § 1983.*Id.* at 447. Plaintiff contends that the dormant commerce clause was intended to create individual rights actionable under Title 42, § 1983 of the U.S. Code. Recent cases have recognized that employment is an area that Congress may regulate under the Commerce Clause. *EEOC v. Wyoming*, 460 U.S. 226, 243 (1983); *United States v. Furrow*, 125 F. Supp. 2d 1178, 1183 (C.D. Cal. 2000).

## DAMAGES

162. Plaintiff contends that as a result of the "Defendants" violating Plaintiff's statutory and constitutional rights, Plaintiff has been forced to expend considerable sums of money seeking relief from the "Defendants" unlawful acts in order to repair the damage to his good name and reputation.

163. Plaintiff contends that Plaintiff has incurred and will incur loss of revenues that "Defendants" could have reasonably anticipated had his application for admission to the Massachusetts Bar not been denied.

164. Plaintiff contends that the Plaintiff is unable at this time to calculate exactly or finally the amounts of the damages he has incurred or that he will incur as a consequence of the unlawful acts of the "Defendants." Plaintiff alleges that but for the unlawful acts by "Defendants," he would have been admitted to the practice of law in Massachusetts, would have opened up a law office and would have established a successful practice. Plaintiff estimates his current and future losses of revenue and business opportunities at $2,500,000.

165. Plaintiff contends that the Plaintiff has suffered and continues to suffer mental pain and anguish, emotional stress and humiliation as a direct result of "Defendants" unlawful conduct. As a result of the unlawful actions of "Defendants," Plaintiff avers that he is entitled to punitive damages in the amount of $7,250,000.

166. Plaintiff contends that the "Defendants" are not cloaked with legislative or judicial immunity against damage suits for rights violations. *Supreme Court of Virginia v. Consumers Union*, 446 U.S. 719 (1980)(concluding that no immunity would exist for the Virginia Bar or the Virginia Supreme Court when acting to enforce the Virginia Bar Code). Nor are the "Defendants" cloaked with judicial immunity: whatever it is doing or has done, its functions must be viewed as entirely administrative in nature. *Forrester vs. White*, 484 U.S. 219

(1988)(holding that a judge did not have judicial immunity when he acted in an administrative capacity to fire a court officer, and noting that in *Supreme Court of Virginia v. Consumers Union, supra*, the court concluded that neither promulgating nor enforcing a Bar Code was a judicial function).

167. Plaintiff contends that the Plaintiff has no adequate remedy at law to prevent "Defendants" from further enforcement of their unlawful rules, policies, and procedures. Defendants' continuing refusal to conform their conduct to the rule of law will cause the Plaintiff to suffer irreparable injury.

## RELIEF DEMANDED

**WHEREFORE,** Plaintiff demands relief as follows:

A. a declaratory judgment finding that:[12]

(1) the question at issue, generally applicable to all applicants is an illicit and constitutionally

invidious violation of all applicants' constitutional rights;

(2) the question at issue, generally applicable to all applicants, requiring applicants to answer the

question in the affirmative is an illicit rule;

B. entry of a preliminary injunction which:[13]

(1) enjoins the defendants from considering the question at issue in regard to the Plaintiff's

application to practice law in the state of Massachusetts.

(2) enjoins the defendants from enforcing the current question at issue in the current bar

examination or in any future bar examination;

(3) enjoins the Defendants from enforcing any decision that otherwise invalidates the Plaintiff's

passing bar application;

C. entry of a permanent injunction which:[14]

---

12

Pursuant to 28 U.S.C.A. Section 2201, Plaintiff requests a declaration of the rights of the parties.

[13] Plaintiff requests injunctive and declaratory relief against the named "Defendants." Plaintiff requests Prospective Injunctive Relief against the "Defendants" to undertake affirmative steps to remedy present and future violations consistent with federal law and the United States Constitution in their "official capacity," and also in their "individual capacity." *See Brown v. Board of Ed.*, 347 U.S. 483 (1954), *See Edelman v. Jordan*, 415 U.S. 651 (1974). Plaintiff requests Negative Injunctive Relief against the "Defendants" preventing the "Defendants" from enforcing an unconstitutional law consistent with federal law and the United States Constitution in their "official capacity," and also in their "individual capacity." *See Ex parte Young*, 209 U.S. 123 (1908), *See Osborn v. Bank of the United States*, 22 U.S. 738 (1824). Plaintiff requests Retrospective Relief against the "Defendants" for "Defendants" past unconstitutional conduct in their "individual capacities" and also in their "official capacities." See, e.g., *Kentucky v. Graham*, 473 U.S. 159 (1985)(discussing distinction between suits against an officer in an individual capacity as opposed to an official capacity); *Foulks v. Ohio Dept. of Rehabilitation & Corrections*, 713 F. 2d 1229 (6th Cir. 1983).

[14] Plaintiff requests injunctive and declaratory relief against the named "Defendants." Plaintiff requests Prospective Injunctive Relief against the "Defendants" to undertake affirmative steps to remedy present and future violations consistent with federal law and the United States Constitution in their "official capacity," and also in their "individual capacity." *See Brown v. Board of Ed.*, 347 U.S. 483 (1954), *See Edelman v. Jordan*, 415 U.S. 651 (1974). Plaintiff requests Negative Injunctive Relief against the "Defendants" preventing the "Defendants" from

(1) enjoins the Defendants from considering the question at issue in regard to the Plaintiff's

application to practice law in the state of Massachusetts.

(2) enjoins the Defendants from enforcing the question at issue in the current bar examination or

in any future bar examination;

(3) enjoins the Defendants from enforcing any decision that otherwise invalidates the Plaintiff's

passing bar application;

D. an award of money damages to compensate the Plaintiff for injuries he has suffered because

of the Defendants' ultra vires and patently unlawful acts;[151617]

E. an award of punitive damages against the Defendants as a deterrent against similar future

conduct by these Defendants or others;[1819]

---

enforcing an unconstitutional law consistent with federal law and the United States Constitution in their "official capacity," and also in their "individual capacity." *See Ex parte Young*, 209 U.S. 123 (1908*), See Osborn v. Bank of the United States*, 22 U.S. 738 (1824). Plaintiff requests Retrospective Relief against the "Defendants" for "Defendants" past unconstitutional conduct in their "individual capacities" and also in their "official capacities." Citation: See, e.g., *Kentucky v. Graham*, 473 U.S. 159 (1985)(discussing distinction between suits against an officer in an individual capacity as opposed to an official capacity); *Foulks v. Ohio Dept. of Rehabilitation & Corrections*, 713 F. 2d 1229 (6th Cir. 1983).

[15] Pursuant to Section 1983, damages are sought personally against the named "Defendants," in their individual capacities and also in their official capacities. *See Monroe v. Pape*, 365 U.S. 167 (1961)(state and local officials could be personally liable for their constitutional violations).

[16] Plaintiff seeks compensatory damages from "Defendants" for the "inherent" value of lost constitutional rights; recovery for mental anguish and emotional distress; feelings of unjust treatment; reputational harm; economic loss; fear; anxiety; humiliation and personal indignity, as well as for out-of-pocket expenses. The Court has stated that the "basic purpose" of the section 1983 action for damages "is to compensate person for injuries that are caused by the deprivation of constitutional rights." *See Carey v. Piphus*, 435 U.S. 247 (1978).

[17] Pursuant to Plaintiff's Section 1983 dormant Commerce Clause and pre-emption claim, Plaintiff requests lost profits and other business-related losses. *See Pioneer Military Lending, Inc. v. Manning*, 2 F.3d 280 (8th Cir. 1993).

[18] Federal law governs the availability of punitive damages in a federal civil rights action under § 1983. *See, e.g., Wulf v. City of Wichita*, 883 F.2d 842, 867 (10th Cir. 1989). A plaintiff may be awarded punitive damages against an individual defendant "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983).

[19] Plaintiff seeks punitive damages from "Defendants" because of their "reckless or callous indifference" to constitutional rights. *See Smith v. Wade*, 461 U.S. 30 (1983)(when a defendant's unconstitutional conduct is shown to be motivated by evil intent, or when it involves reckless or callous indifference to the federally protected rights of others, a jury may award punitive damages against the official).

F. an award of all costs of this action, including reasonable attorney fees pursuant to 42 U.S.C.§ 1988 and 42 U.S.C. § 12205;[20][21]

G. such further action and other relief as this Court deems appropriate; and,

H. retention of jurisdiction for the enforcement of the injunctive orders.

## NOTICE OF DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on issues triable before a jury.

**STEPHEN DUNNE**

**PO Box 990695**

**Boston, MA 02199**

---

[20] The Civil Rights Attorney's Fees Awards Act: 42 U.S.C. § 1988(b), *amended by* Pub. L. No. 104-317, Title III, § 309(b), 110 Stat. 3853 (119), provides: (b) Attorney's fees In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318 [20 U.S.C.A. § 1681 et seq.] the Religious Freedom Restoration Act of 1993 [42 U.S.C.A. § 2000bb et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.], or section 13981 of this title [Violence Against Women Act], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction. provides that a prevailing party in actions brought under specified civil rights statutes, including § 1983, may be entitled to an award of attorney's fees as part of the costs of litigation.

[21] Pursuant to 42 U.S.C.A. Section 1988 (b), Plaintiff requests reasonable attorney's fees from the state treasury in the event that Plaintiff is a successful Plaintiff in the civil rights actions. *See Hutto v. Finney*, 437 U.S. 678 (1978)(the Supreme Court held that federal courts may award attorneys' fees to be paid from state treasuries to successful plaintiffs in civil rights actions pursuant to 42 U.S.C.A. Section 1988); The Court has stated that the place to start in assessing the reasonableness of a fee award for a successful plaintiff "is the number of hours reasonable expended on the litigation multiplied by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424 (1983).